[Cite as *State v. Henderson*, 2026-Ohio-380.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-250243 |
| | | TRIAL NO. B-2404211 |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| LAWRENCE HENDERSON, | : | |
| Defendant-Appellee. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**

**Enter upon the journal of the court on 2/6/2026 per order of the court.**

**By:**_____
        **Administrative Judge**

[Cite as *State v. Henderson*, 2026-Ohio-380.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                           :        APPEAL NO.    C-250243
                                                  TRIAL NO.     B-2404211
     Plaintiff-Appellant,         :

  vs.                                    :

                                                  *O P I N I O N*
LAWRENCE HENDERSON,                      :

     Defendant-Appellee.          :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: February 6, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.,* Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Clyde Bennett, II*, for Defendant-Appellee.

**CROUSE, Judge.**

**{¶1}** Police seized drugs during a traffic stop of defendant-appellee Lawrence Henderson, which Henderson moved to suppress. Although Henderson's motion and witness examination centered on the propriety of the stop, the trial court ultimately granted his motion to suppress based on the State's failure to justify the officers' subsequent *search* of the vehicle.

**{¶2}** The State then took this interlocutory appeal. It argues that the trial court should have given it the chance to present further evidence before ruling on the constitutionality of the search. Because we agree that the State did not have adequate notice it needed to present evidence justifying the search at the suppression hearing, we reverse the trial court's judgment and remand for further proceedings.

## I. BACKGROUND

**{¶3}** Henderson was a passenger in a vehicle that was stopped by police officers after they observed a traffic infraction. Upon stopping the vehicle, officers deployed "stop sticks," which would puncture the vehicle's tires if it tried to drive away. The driver of the vehicle was removed when police noticed a gun in the car after he had denied having a weapon. Eventually the officers searched the vehicle and found a black bag containing a significant quantity of marijuana.

**{¶4}** Henderson was indicted for trafficking in and possession of between 200 and 1,000 grams of marijuana in violation of R.C. 2925.03(A)(2) and R.C. 2925.11(A), respectively. Henderson promptly filed a pro-forma motion to suppress (1) "the seizure and arrest of the Defendant;" (2) "all statements, whether oral or written, made by or elicited from Defendant;" and (3) "tangible evidence seized from the Defendant."

**{¶5}** A month later, the State filed its bill of particulars, which alleged that

3

Henderson had "admitted to having an illegal amount of marijuana within the motor vehicle" before officers searched it.

{¶6} Five months after that, the trial court permitted Henderson to file a more robust "Supplemental Motion to Suppress Evidence." In the first paragraph, Henderson wrote as follows:

> Defendant . . . respectfully requests this Court for an Order excluding from the trial of this matter any and all items illegally and unconditionally seized from the motor vehicle in which the Defendant was an occupant. The Defendant also respectfully requests this Court for an Order excluding from the trial of this matter any and all items seized that were obtained as a result of illegal search and seizure that occurred at the traffic stop and seizure of the vehicle. This includes, but is not limited to any and all items found in the black bag that contained marijuana attributed to the Defendant. The bag was improperly seized and searched in connection with the unconstitutional traffic stop and/or seizure.

The second paragraph of the motion recited Fourth Amendment standards governing the seizure of motor vehicles. The third described the seizure of the vehicle and the officers' use of stop sticks. This paragraph also noted that, after the driver was removed, "police searched the car and located a black bag," which "contained marijuana attributed to the Defendant." Finally, the fourth paragraph concluded the motion as follows:

> In light of the foregoing, it is crystal clear that any and all evidence obtained from the Defendant during the unconstitutional stop and search of his motor vehicle should be excluded from the trial of this

4

matter as well as any other items or property seized in connection with

or as a result of the unconstitutional stop/seizure.

The State filed a memorandum in opposition, which addressed only the traffic-stop issue.

{¶7} The trial court held a suppression hearing at which Officers Grant Perry and Nick Dezarn, two of the officers involved in the stop, testified. The State's opening statement and the officers' initial testimony focused exclusively on the events preceding the stop, the stop itself, and the driver's arrest. Henderson's counsel made no opening statement and did not ask the officers about their basis for searching the vehicle or the black bag. In his closing argument, however, defense counsel argued that, regardless of the legality of the *stop*, the court should suppress the drugs because the "record [was] completely devoid of anything that would give the officers the right to search the car and find the item, that black duffle bag that was found inside the car."

{¶8} The State responded with surprise, representing that it had limited the scope of its presentation "in reliance [on] Defendant's supplemental motion that the only basis to challenge this circumstance was the stop of the vehicle." The State acknowledged that perhaps it had misread that motion and requested that the trial court reopen the hearing and allow the State to present further evidence before the court ruled on the constitutionality of the search itself.

{¶9} The trial court acknowledged that it could "see how the State may have thought this [motion] was limited," but ultimately felt it sufficiently "clear" that the supplemental motion to suppress had encompassed a challenge to the search of the vehicle, and not just the traffic stop. Nevertheless, the court reopened the hearing and permitted the State to recall Officers Perry and Dezarn to ask about the search.

{¶10} Neither witness proved very helpful. Officer Dezarn could recall nothing

about the search, and Officer Perry testified that he had not been "involved in any way with interactions that the officers had with Mr. Henderson," because he had been "dealing with the driver." Officer Perry said he believed Officers Dezarn and Buck, and perhaps a Sergeant Rock, had been involved with the search.

{¶11} Counsel for the State explained that, had he "been aware that the issue of the search of the vehicle was in play," he would have requested a hearing date on which Officers Buck and Chitwood—the officers involved in the search—could have attended. Counsel therefore asked the trial court for "a continuance in progress in order to obtain testimony from Officers Buck and Chitwood."

{¶12} The trial court denied the State's motion for a continuance and granted Henderson's motion to suppress. In its written entry, the trial court explained that it was granting the motion because the State had "failed to present any evidence justifying the search of contents inside the vehicle."

{¶13} After the hearing, the State proffered for the record "that the expected testimony from the unavailable officers would establish that the Defendant admitted to having an illegal amount of marijuana within the motor vehicle, which justified a search of the vehicle at that point." The State then filed this timely interlocutory appeal pursuant to R.C. 2945.67 and Crim.R. 12(K).

## II. ANALYSIS

{¶14} The State's two assignments of error challenge the trial court's decisions (1) to grant Henderson's motion to suppress and (2) to deny the State's motion for a continuance. Because these issues are intertwined, we address them together.

### A.

{¶15} The State's central argument is that Henderson's motion to suppress only challenged the validity of the traffic stop that ultimately led to the discovery of

the marijuana and did not adequately raise the issue of the legality of the vehicle search.

{¶16} The form and contents of "motions" are governed by Crim.R. 47. A motion should (1) "state with particularity the ground upon which it is made" and (2) "set forth the relief and order sought." Crim.R. 47. This particularity requirement ensures that both "the prosecutor and court are placed on notice of those issues to be heard and decided by the court." *State v. Shindler*, 70 Ohio St.3d 54, 58 (1994).

{¶17} We review de novo whether a motion to suppress comports with Crim.R. 47. *See State v. Codeluppi*, 2014-Ohio-1574, ¶ 8-9; *State v. Clark*, 2024-Ohio-1869, ¶ 9 (10th Dist.); *State v. Moore*, 2017-Ohio-7024, ¶ 36 (11th Dist.).

{¶18} When officers execute a search without a warrant, the State must shoulder the burden of explaining why the search was nevertheless "reasonable" under the Fourth Amendment. *Xenia v. Wallace*, 37 Ohio St.3d 217, 218 (1988). A defendant triggers this obligation by filing a motion to suppress that is sufficient, under Crim.R. 47, to "put the State on notice that it [must] prove the constitutionality of the warrantless search with an exception to the warrant requirement." *State v. Curry*, 2025-Ohio-2083, ¶ 41 (1st Dist.); *see Codeluppi* at ¶ 13; *see also Wallace* at paragraphs one and two of the syllabus.

{¶19} Fair notice is the goal and the lodestar of the Crim.R. 47 analysis. Because the defendant's motion to suppress "is merely a procedural vehicle to 'put the ball into play,'" Crim.R. 47 does not demand "excruciating detail." *Codeluppi* at ¶ 13; *accord Curry* at ¶ 37, 40; *State v. Mishler*, 2024-Ohio-1085, ¶ 13 (9th Dist.). When a defendant's motion to suppress identifies (1) the particular actions alleged to have constituted an unlawful search or seizure, (2) the factual and legal basis on which the movant asserts those actions were not "reasonable" under the Fourth Amendment,

and (3) the relief sought (i.e., the evidence to be suppressed), the motion will generally provide the State with adequate notice as to the burden it must meet. *See*, *e.g.*, *Codeluppi* at ¶ 13 (motion to suppress results of field-sobriety tests was sufficient where it alleged that officer "had not conducted [them] in substantial compliance with" applicable law); *Curry* at ¶ 40-41; *Wallace* at paragraph one of the syllabus (motion to suppress must "demonstrate the lack of a warrant" and "raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge"); *Shindler*, 70 Ohio St.3d at 56-57.

{¶20} Henderson's first motion to suppress did not comply with Crim.R. 47. His supplemental motion to suppress did give the State adequate notice that he was challenging the reasonableness of the seizure and detention of the vehicle, but was ambiguous as to whether it was also challenging the *search* of the vehicle. While Crim.R. 47 does not require "highly detailed pleading of the facts and law," *Codeluppi*, 2014-Ohio-1574, at ¶ 15, it does require that the State have notice of what it will need to show at a hearing, *id.* at ¶ 13. The ambiguity here deprived it of that notice.

{¶21} Henderson's supplemental motion provided no legal theory as to why the search itself was not "reasonable" for Fourth Amendment purposes. It did not even allege, for example, that the search of the vehicle or bag had been warrantless. *Compare Wallace*, 37 Ohio St.3d 216, at paragraph one of the syllabus (defendant must allege the lack of a warrant in motion to suppress); *Curry*, 2025-Ohio-2083, at ¶ 41 (1st Dist.) (motion sufficient where it put the State on notice of the need to show an exception to the warrant requirement).

{¶22} Instead, the supplemental motion focused on the legality of the traffic stop, the officers' use of "stop sticks," and the duration of Henderson's detention. True,

8

the motion made a handful of passing references to the "unconstitutional stop *and search* of [Henderson's] motor vehicle" and to the "illegal *search* and seizure that occurred at the traffic stop and seizure of the vehicle." But these statements, without even an assertion that the officers had lacked a search warrant, were inadequate to put the State on notice that it would need to defend the warrantless search at the hearing.

**{¶23}** The State's reading of the scope of Henderson's motion—i.e., as challenging only the seizure—is not inconsistent with Henderson's request to suppress items found during the search. If Henderson had shown that the seizure of the vehicle was unconstitutional, then the items found and statements made during the subsequent search would be suppressed as fruits of that unconstitutional seizure.

**{¶24}** Further, the motion must be read in its procedural context. Five months earlier, the State had filed a bill of particulars that alleged that Henderson had admitted to possessing an illegal quantity of marijuana prior to the search. After the suppression hearing, the State proffered that Officers Buck and Chitwood would have testified to that effect. In light of the allegation in the State's bill and the focus of Henderson's motion, the State could reasonably have concluded that Henderson was turning his energies away from the search of the vehicle and toward the stop of the vehicle.

**{¶25}** We hold that Henderson's supplemental motion was at least ambiguous as to whether it went beyond the validity of the traffic stop to challenge the reasonableness of the vehicle search. And because that motion was ambiguous, it could not provide the State with adequate notice that Henderson sought to challenge the lawfulness of the search itself. The trial court therefore had no obligation under Crim.R. 47 to address the search's constitutionality when it ruled on the supplemental motion to suppress.

***B.***

**{¶26}** But just because the trial court did not *have to* address the search issue does not mean the trial court was categorically *prohibited* from doing so. Generally, "a trial court is free to expand the scope of a suppression hearing beyond the issues specified in the motion to suppress [1] so long as the matters within the expanded scope were material to the suppression sought, and [2] so long as the State had a reasonable opportunity to prepare itself for the hearing." (Cleaned up.) *State v. Byrnes*, 2014-Ohio-1274, ¶ 12 (2d Dist.); *accord State v. Tyson*, 2015-Ohio-3530, ¶ 35 (3d Dist.).

**{¶27}** Henderson's motion sought suppression of the bag's contents. Though it was ambiguous whether the motion based this request on the alleged unreasonableness of the vehicle search itself, Henderson clearly raised this issue in his closing argument at the suppression hearing. The law did not *prohibit* the trial court from considering the search's constitutionality as an issue "material to the suppression" Henderson sought.

**{¶28}** But in expanding the scope of a suppression hearing, fair notice is, once again, the touchstone. A trial court abuses its discretion to manage proceedings when it chooses to rule on an issue beyond the scope of the motion to suppress without first providing the parties with adequate notice and an opportunity to make their cases. *See Tyson* at ¶ 28 (reviewing a trial court's decision to "raise and consider suppression issues outside of the scope of Crim.R. 47" under "an abuse-of-discretion standard"); *State v. Pilot*, 2004-Ohio-3669, ¶ 42-43 (12th Dist.) (trial court abused its discretion by not reopening suppression hearing for State to litigate issues beyond the suppression motion). So, if the court below wished to address the issues Henderson raised in his closing arguments, it had to give the State adequate notice and an

opportunity to gather the necessary witnesses. For the reasons we have already set forth, Henderson's motion did not provide such notice. Indeed, the State had agreed to hold a suppression hearing on a date when Officers Buck and Chitwood would not be available in reliance on the apparent limits of that motion.

{¶29} We therefore hold that the trial court abused its discretion by ruling on the constitutionality of the search without first ensuring the State received adequate notice and a meaningful opportunity to present its arguments and evidence. *Compare Tyson*, 2015-Ohio-3530, at ¶ 32 (3d Dist.); *Pilot* at ¶ 43.

## III. CONCLUSION

{¶30} For the foregoing reasons, we sustain the State's first assignment of error and reverse the trial court's April 17, 2025 order granting Henderson's motion to suppress. And because this disposition effectively vacates the trial court's order denying the motion for a continuance, we hold that the State's second assignment of error is moot, and we decline to address it.

{¶31} The cause is remanded to the trial court for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

**ZAYAS, P.J.,** and **BOCK, J.,** concur.